**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MARTIN J. ROTHSCHILD,**

                  **Plaintiff,**

       **v.**

**JOHN DOE #1 et al.,**

                  **Defendants.**

_____

                        **9:14-cv-1343**
                        **(GLS/DEP)**

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Cherundolo Law Firm, PLLC      CRISTEN M. MENDOZA, ESQ.
AXA Tower One 17th Floor       JOHN C. CHERUNDOLO, ESQ.
100 Madison Street
Syracuse, NY 13202

Cozen, O'Connor Law Firm     MARTIN P. DUFFEY, ESQ.
1650 Market Street, Suite 2800
Philadelphia, PA 19103

**FOR THE DEFENDANTS:**
*John Does #1-6, Jane Does #1-2,*
*Unknown Named Employees of*
*Elmira Correctional Facility, and*
*Unknown Named Employees of*
*Clinton Correctional Facility*
NO APPEARANCE

*Officer Damon Lamphier,*
*Officer Joseph Cavaluzzi,*
*Joyce Carver-Jordan,*
*Steven Racette, Richard Adams,*
*Peter A. Braselmann,*

*Paul Harriman, Vonda L. Johnson,*
*Irene Walker, Charles R. Simpson,*
*Jill Northrop, and Nurse Waldron*
HON. BARBARA D. UNDERWOOD          COLLEEN D. GALLIGAN
New York State Attorney General          Assistant Attorney General
The Capitol
Albany, NY 12224

*Irwin Lieb*
Napierski, Vandenburgh Law Firm          DIANE LUFKIN SCHILLING,
296 Washington Avenue Extension          ESQ.
Albany, NY 12203                              EUGENE D. NAPIERSKI, ESQ.

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Martin J. Rothschild commenced this action under 42 U.S.C. § 1983 against numerous defendants allegedly employed or contracted by the New York State Department of Corrections and Community Supervision (DOCCS). (Compl., Dkt. No. 1.) Rothschild alleges that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (3d Am. Compl., Dkt. No. 92.) Pending is defendant Dr. Irwin Lieb's motion for summary judgment, (Dkt. No. 109), and the

remaining defendants' (hereinafter "DOCCS defendants") motion for

summary judgment, (Dkt. No. 107). DOCCS defendants also move to

disqualify Rothschild's experts. (Dkt. No. 121 at 3-5).[1] For the reasons

that follow, Dr. Lieb's motion is granted, and DOCCS defendants' motion is

granted in part and denied in part.

## II. Background

**A.    Facts**[2]

*1.    Elmira Correctional Facility*

On November 18, 2013, Rothschild was received into DOCCS'

custody at the Elmira Correctional Facility (hereinafter "Elmira"). (Defs.'

Statement of Material Facts (SMF) ¶ 1, Dkt. No. 107, Attach. 1.) The same

day, a nurse reviewed Rothschild's medical chart; she noted his history of

elevated lipids and Crohn's disease[3]; and she ordered medications and

laboratory tests, the results of which were normal. (*Id.* ¶¶ 5, 7.) On

---

[1] Also pending is Rothschild's request for oral argument. (Dkt. No. 117.) As it is squarely within the court's discretion not to avail itself of oral argument, *see Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989); N.D.N.Y. L.R. 7.1(h), the request is denied.

[2] Unless otherwise noted, the facts are not in dispute.

[3] Crohn's Disease is "a chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract from mouth to anus, but commonly involving the terminal ileum with scarring and thickening of the bowel wall; it frequently leads to intestinal obstruction and fistula and abscess formation and has a high rate of recurrence after treatment." Dorland's Illustrated Medical Dictionary 480 (28th ed. 1994).

November 21, defendant Dr. Peter A. Braselmann conducted a reception physical of Rothschild, found no abnormalities, and ordered a slew of tests, the results of which were normal.  (*Id.* ¶¶ 8-9.)

On December 5, complaining of a flare-up of his Crohn's disease, Rothschild was seen by a nurse at sick call.  (*Id.* ¶ 10.)  He contends that on December 5 and 6 he reported urological symptoms of uncontrolled urination and the inability to urinate "to his medical providers."  (Pl.'s SMF ¶¶ 9-10, Dkt. No. 115, Attach. 4.)  Rothschild also contends that defendant Jill Northrop, a nurse,[4] ordered a blood test on December 5.  (Pl.'s SMF ¶ 12.)  He asserts that his blood was drawn for that purpose on December 9, and the results, dated December 10, found no abnormalities and indicated that "'no action is required at this time.'"  (*Id.* ¶¶ 16, 20.)

Rothschild maintains that between December 5 and 11, he told several corrections officers at Elmira, including defendant Officer Joseph Cavaluzzi, that "he was having severe urological symptoms, that he needed to be seen, and that he was not allowed to go up to the infirmary."  (*Id.* ¶ 15.)  He contends that he made verbal requests to corrections

---

[4] Rothschild contends that Northrop was a nurse practitioner.  (3d Am. Compl. ¶ 13.) DOCCS defendants admit only that she is a nurse.  (Dkt. No. 99 ¶ 8.)  As there is no material difference for purposes of the instant motion, the court simply refers to her as a nurse.

officers to go to the infirmary on December 11, and he "believes" that defendant Officer Damon Lamphier was one of them.  (*Id.* ¶¶ 25-26.) Rothschild requested sick call that afternoon, a nurse came to his cell with ibuprofen, and he was taken to the infirmary around 5:00 P.M.  (Defs.' SMF ¶¶ 12-14.)  That evening, he was transported to the emergency department of a local hospital and treated for urinary retention.  (*Id.* ¶ 16.)  Rothschild was diagnosed with urinary retention caused by a blockage in the bladder and a bladder diverticulum[5] and was catheterized.  (*Id.* ¶ 18.)

Rothschild returned to Elmira with a Foley catheter.[6]  (*Id.* ¶ 19.)  On December 12, he was admitted to the infirmary in connection with a urinary tract infection (UTI) and bladder retention, and Dr. Braselmann cared for him.  (*Id.* ¶ 22.)  Dr. Braselmann prepared an emergency request for consultation referring Rothschild to Dr. Alan Angell, the doctor who treated him at the local hospital, and requested that he be seen at a urology clinic the next day.  (*Id.* ¶ 24.)  Rothschild avers that, following a December 13

_____

[5] A diverticulum is "a circumscribed pouch or sac of variable size occurring normally or created by herniation of the lining mucous membrane through a defect in the muscular coat of a tubular organ."  Dorland's Illustrated Medical Dictionary 500 (28th ed. 1994).

[6] A Foley catheter is "a catheter that is held in position in the urethra" and "retained in the bladder by a balloon inflated with air or liquid."  Dorland's Illustrated Medical Dictionary 279 (28th ed. 1994).

consultation with Dr. Angell, it was noted in his chart to change his catheter

monthly.  (Pl.'s SMF ¶ 38.)[7]  On December 23, Dr. Braselmann referred

Rothschild to Dr. Angell for a further consultation for urinary retention.

(Defs.' SMF ¶ 28.)  In January and February 2014, Rothschild was seen by

Dr. Angell for, among other things, urological procedures.  (*Id.* ¶¶ 29-32.)

Rothschild contends that his catheter was changed on January 17, 2014

and again on February 27.  (Pl.'s SMF ¶¶ 40, 45.)

> 2.     *Clinton Correctional Facility*

On March 3, 2014, Rothschild was transferred to Clinton Correctional

Facility (hereinafter "Clinton").  (Defs.' SMF ¶ 37.)  He states that his

assigned healthcare provider was defendant Dr. Richard Adams, (Pl.'s

SMF ¶ 47), who he maintains was responsible for ordering his monthly

catheter changes, (*id.* ¶ 66).

On April 29, Rothschild advised a nurse that he had been

experiencing nausea and vomiting for three days, abdomen pain, and foul-

smelling urine with blood.  (Defs.' SMF ¶ 56.)  The nurse requested a

consultation through Telemed, which is used for remote consultations with

---

[7] Rothschild also contends that, following a February 18, 2014 appointment with Dr. Angell, it was noted in his chart to change his catheter every four weeks.  (Pl.'s SMF ¶ 44.)

a physician when one is not available at Clinton.  (*Id.* ¶¶ 57-58.)  A doctor provided the Telemed consultation, prescribed medicine including an antibiotic, and admitted Rothschild to the infirmary.  (*Id.* ¶¶ 59-60.)  Defendant Dr. Vonda L. Johnson examined Rothschild the next day, diagnosed him with a UTI, and ordered various treatments including a change in antibiotics.  (*Id.* ¶¶ 61-64.)

On May 1, Dr. Johnson again examined Rothschild and ordered that he continue intravenous fluids, antibiotics, and monitoring.  (*Id.* ¶¶ 65-66.)  That day, defendant Nurse Rebecca Waldron monitored his vital signs during her shift in the infirmary.  (*Id.* ¶ 67.)  She noted that Rothschild's catheter was functioning properly and there were no signs of infection.  (*Id.* ¶¶ 68-69.)  On May 2, Dr. Johnson again examined Rothschild and found that he was feeling well and wanted to go back to his cell.  (*Id.* ¶ 70.)  Specifically, she examined his catheter and found it intact, functioning properly, and draining clear yellow urine.  (*Id.* ¶ 71.)[8]

Rothschild states that on May 14, 2014, he "was caused" to undergo

---

[8] Rothschild states that, on April 30, Dr. Johnson ordered a "urinary analysis culture and sensitivity" to identify the bacteria in his urine.  (Pl.'s SMF ¶ 85.)  He also states that the results did not come back until May 3, a day after he was discharged from the infirmary, and Dr. Johnson did not review the results.  (*Id.* ¶¶ 86, 88-90.)

a catheter change because his catheter line "had rotted out and fell out of his body." (Pl.'s SMF ¶ 91.) He asserts that "[w]hile under the care of Dr. Adams," for the two months between his March 3 arrival at Clinton and May 14, his catheter was not changed. (*Id.* ¶ 71.)

On July 15, 2014, Nurse Waldron changed Rothschild's catheter. (Defs.' SMF ¶ 77.) He states that it took thirty to forty minutes and caused excruciating pain, and upon insertion of the catheter he felt pressure in his bladder and was unable to walk. (Pl.'s SMF ¶ 94.) He adds that upon saying that the catheter did not feel right, he was told by a corrections officer that "'it's not supposed to feel normal'" and to "'get the hell out of here.'" (*Id.*) Ten days later, Dr. Adams examined Rothschild and found no residual symptoms of his prior UTI. (Defs.' SMF ¶ 79.)

On the afternoon of July 31, defendant Nurse Irene Walker saw Rothschild in the Clinton emergency department for an emergency sick call. (*Id.* ¶ 81.) He reported the following: he thought he was having a UTI; bleeding and leaking around his catheter; and severe pain. (*Id.*) After examining Rothschild, Nurse Walker noted the following: his catheter irrigated easily; there were no signs of blood or urinary leakage where the catheter was inserted or in his underwear; and the urine in his leg bag was

a clear amber color without odor.  (*Id.* ¶ 82; Pl.'s SMF ¶ 103.)  Based on her examination, Nurse Walker found that his condition was non-emergent and directed him to follow up at the regular sick call in the morning.  (Defs.' SMF ¶ 83.)

Later that night, defendant Nurse Paul Harriman saw Rothschild for another emergency sick call.  (*Id.* ¶ 85.)  He reported having bladder spasms, cramping, chills, and feeling like he had an infection.  (*Id.* ¶ 87.)  Nurse Harriman called the on-call doctor, Dr. Adams, and reported Rothschild's complaints.  (*Id.* ¶ 90.)  Nurse Harriman also communicated his findings that Rothschild's vital signs were normal except for an elevated heart rate, and he did not have a temperature or kidney pain.  (*Id.* ¶¶ 88-90.)  Dr. Adams prescribed an antibiotic to be administered at that time and advised Rothschild to follow up with a doctor the next morning.  (*Id.* ¶ 91.)  The next morning, Rothschild was seen by a nurse practitioner and transported to an outside hospital for further care.  (*Id.* ¶ 97.)  He contends that he was diagnosed with an acute UTI.  (Pl.'s SMF ¶ 125.)  He also maintains that he was transferred to an intensive care unit of an outside hospital for treatment of septic shock, (*id.* ¶ 128), returned to the Clinton infirmary on August 8, and was discharged from the infirmary on August

11, (*id.* ¶ 131).

3.    *Dr. Lieb*

In his third amended complaint, Rothschild alleges that Dr. Lieb was, at all relevant times, "employed by and/or contracted to perform medical services for inmates on behalf of Clinton . . . and/or . . . DOCCS."  (3d Am. Compl. ¶ 22.)  Regarding Dr. Lieb, Rothschild contends the following. After he was transferred to Clinton, Rothschild saw Dr. Lieb for a urological consultation on March 20, 2014.  (Pl.'s SMF ¶¶ 9-10, Dkt. No. 114, Attach. 4 at 5-6) ("Pl.'s Lieb SMF").  Dr. Lieb did not make any recommendations in Rothschild's treatment plan regarding maintenance of his catheter, nor did he put in any orders directing that his catheter or leg bag be changed. (*Id.* ¶ 22.)[9]

## B.    Procedural History

Rothschild filed his complaint on November 4, 2014.  (Compl.) Subsequently he filed an amended complaint, (Am. Compl., Dkt. No. 52), and a second amended complaint, (2d Am. Compl., Dkt. No. 66).  Dr. Lieb filed a motion to dismiss on April 21, 2015, (Dkt. No. 44), which the court

---

[9] There are a number of additional facts asserted by the parties that are not mentioned because they are not material.

denied, (Dkt. No. 90).  Thereafter Rothschild filed his third amended complaint, (3d Am. Compl.), which is the operative pleading.  Rothschild's sole claim is for deliberate indifference to serious medical needs under the Eighth Amendment and Section 1983.  (*Id.* ¶ 1.)  After discovery, the pending motions were filed.

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. <u>Discussion</u>

### A. <u>John Doe, Jane Doe, and Unknown Defendants</u>

In his third amended complaint, Rothschild includes, as defendants, John Does (#1-4), Jane Does (#1-2), Unknown Named Employees of Elmira Correctional Facility, and Unknown Named Employees of Clinton Correctional Facility.  (3d Am. Compl. at 1-4.)

Rothschild previously identified certain Doe defendants and was granted permission to file his third amended complaint.  (Dkt. No. 83,

Attach. 9 at 1; Dkt. No. 89.)  Now, at summary judgment, discovery is

closed, and Rothschild has had ample time and opportunity to identify and

serve the remaining Doe and Unknown defendants.  He has not.  Thus

dismissal of these defendants without prejudice is appropriate.  *See

Delrosario v. City of New York*, No. 07 Civ. 2027, 2010 WL 882990, at *5

(S.D.N.Y. Mar. 4, 2010); *Keesh v. Artuz*, No. 97 Civ. 8417, 2008 WL

3166654, at *2 (S.D.N.Y. Aug. 6, 2008), *aff'd sub nom. Allah v. Michael*,

506 F. App'x 49 (2d Cir. 2012).

## B.  <u>DOCCS Defendants' Motion for Summary Judgment</u>

DOCCS defendants move for summary judgment on two basic

grounds: (1) Rothschild cannot establish a prima facie case as a matter of

law, and (2) DOCCS defendants are shielded by qualified immunity.  (Dkt.

No. 107, Attach. 29 at 2, 16-18.)

### 1.  *Deliberate Indifference to Serious Medical Needs*

To show that prison medical treatment was so inadequate as to

constitute "cruel or unusual punishment" prohibited by the Eighth

Amendment, Rothschild must prove that DOCCS defendants' acts or

omissions amounted to "deliberate indifference to [a] serious medical

need[]."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Such a claim

includes both an objective and a subjective component.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

The objective component asks whether the alleged deprivation of medical care was "sufficiently serious," a standard that "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Id.* (internal quotation marks and citation omitted).  Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks and citation omitted).

With respect to the subjective component, a defendant "must act with a sufficiently culpable state of mind."  *Hathaway*, 37 F.3d at 66.  That is, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837

(1994).  "[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it."  *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).  However, a defendant's medical malpractice absent culpable recklessness does not meet the subjective requirement.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Likewise, "mere disagreement over the proper treatment does not create a constitutional claim."  *Chance*, 143 F.3d at 703.

    *2.   Qualified Immunity*

    "Qualified immunity shields [defendants] from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013). Prisoners have a clearly established constitutional right to medical care. *See Ruiz v. Blanchette*, 529 F. App'x 33, 35-36 (2d Cir. 2013); *Petrazzoulo v. U.S. Marshals Serv.*, 999 F. Supp. 401, 409-10 (W.D.N.Y. 1998).  The question, then, is whether it was objectively reasonable for DOCCS defendants to believe that their actions were lawful at the time.  *See Coons v. Casabella*, 284 F.3d 437, 440 (2d Cir. 2002).

*3.     Defendants Joyce Carver-Jordan, Steven Racette, Paul
       Harriman, and Charles R. Simpson*

DOCCS defendants argue that defendant Joyce Carver-Jordan

retired from DOCCS in 2009, years prior to Rothschild's incarceration, and

therefore cannot be liable.  (Dkt. No. 107, Attach. 29 at 10.)  They also

argue that defendants Steven Racette and Charles R. Simpson cannot be

liable because they were not personally involved in Rothschild's medical

treatment, (*id.* at 11, 14), and there is no support for a claim against Nurse

Harriman, (*id.* at 15-16).  In his response, Rothschild does not oppose

summary judgment as to Carver-Jordan, Racette, Simpson, or Harriman.

(Dkt. No. 115, Attach. 5 at 23.)  Thus, summary judgment is granted as to

those four defendants.

*4.     Officer Lamphier and Officer Cavaluzzi*

DOCCS defendants argue that Rothschild cannot establish a prima

facie for deliberate indifference against Officer Lamphier or Officer

Cavaluzzi.  (Dkt. No. 107, Attach. 29 at 7-8.)  Rothschild argues that they

are liable under the theory that they denied him access to needed medical

care.  (Dkt. No. 115, Attach. 5 at 13-14.)  The court agrees with DOCCS

defendants.

Rothschild asserts that he "believes" that he made a verbal request to Officer Lamphier to go to the infirmary on December 11, 2013. (Pl.'s SMF ¶ 26.) "This unsubstantiated belief is insufficient to defeat summary judgment." *Cavanaugh v. County of Nassau*, No. 13–CV–3389, 2015 WL 5794211, at *6 (E.D.N.Y. Sept. 30, 2015) (internal citations omitted); *see Gleason Works v. Oerlikon Geartec, AG*, 141 F. Supp. 2d 334, 341 (W.D.N.Y. 2001) ("[A] belief is insufficient . . . to survive a motion for summary judgment[.]") (internal quotation marks and citation omitted).

In response to Officer Cavaluzzi's declaration, in which he attests that he was not aware that Rothschild had any specific medical problems, (Dkt. 107, Attach. 5 ¶ 15), Rothschild "asserts that he informed [Officer] Cavaluzzi of certain specific medical problems during the time he was housed [at] . . . Elmira," (Dkt. No. 115, Attach. 4 at 5, ¶ 36). The only evidence supporting this is Rothschild's deposition testimony that he told Officer Cavaluzzi about his "symptoms" and he needed to be seen in the infirmary. (Dkt. No. 107, Attach. 17 at 106.)[10] This is insufficient because

---

[10] Rothschild also testified that he "did mention it to [Officer Cavaluzzi] . . . that [he] was having these symptoms, but the most acute of the symptoms were occurring when other [corrections officers] were there," which cuts against his claim. (Dkt. No. 107, Attach. 17 at 107.)

Rothschild's claim "lacks sufficient factual specificity to create a triable issue." *Colon v. Coughlin*, 58 F.3d 865, 874 n.8 (2d Cir. 1995). For instance, Rothschild does not state what symptoms he told Officer Cavaluzzi about or when he told him. *See id.*; *Richards v. Goord*, No. 9:04-CV-1433, 2007 WL 201109, at *14 (N.D.N.Y. Jan. 23, 2007).

Even if Rothschild told Officer Cavaluzzi that he was having "severe urological symptoms, that he needed to be seen, and that he was not allowed to go up to the infirmary," (Pl.'s SMF ¶ 15),[11] there is nothing in the record to infer that Officer Cavaluzzi should have appreciated that Rothschild had a serious medical need. *See Larkins v. Cayuga County*, No. 9:13–CV–219, 2014 WL 4760064, at *8 (N.D.N.Y. Sept. 24, 2014). And it is undisputed that, on December 11, 2013, a nurse came to Rothschild's cell with ibuprofen, and he was taken to the infirmary around 5:00 P.M. (Defs.' SMF ¶¶ 12-14.) Rothschild's failure to specify what he told Officer Cavaluzzi, and when he said it in relation to when he was

---

[11] The support for this adduced fact is dubious. At his deposition, Rothschild testified that corrections officers, including Officer Cavaluzzi, "came to realize that [he] had been very sick and [he] had a lot of problems and [he] would talk to them on and off just in general about the fact that [he] was having problems *with the treatment*." (Dkt. No. 107, Attach. 17 at 55 (emphasis added).) Not only does this concern Rothschild's treatment—which necessarily would have occurred after he was taken to the infirmary——but even if such testimony could be interpreted as supporting the claim against Officer Cavaluzzi, it does not cure Rothschild's insufficient factual specificity.

treated, leaves his claim lacking.  Based on this record, no reasonable factfinder could conclude that Officer Cavaluzzi was deliberately indifferent. *See Wilson v. Yussuff*, No. 14–CV–3684, 2015 WL 77433, at *4 (E.D.N.Y. Jan. 6, 2015).

     *5.   Dr. Braselmann and Nurse Northrop*

DOCCS defendants argue that Dr. Braselmann and Nurse Northrop were not personally involved and therefore cannot be liable.  (Dkt. No. 107, Attach. 29 at 8-10).  Rothschild counters that his urinary retention was obvious such that they had the requisite knowledge of the substantial risk to him.  (Dkt. No. 115, Attach. 5 at 8-13.)  The court agrees with DOCCS defendants.

Rothschild's claim as to Dr. Braselmann and Nurse Northrop suffers from a fatal flaw: he offers no evidence that they knew of his urological symptoms, let alone that they had the requisite knowledge of substantial risk.  Instead, Rothschild states that between December 5 and 6, 2013, he "reported [his] urological symptoms *to his medical providers*."  (Pl.'s SMF ¶ 10 (emphasis added).)  He also states that between December 5 and December 11, he told several corrections officers that he was having severe urological symptoms.  (*Id.* ¶¶ 15, 25.)  But there is no evidence that

Dr. Braselmann or Nurse Northrop were notified of his symptoms. *See Larkins*, 2014 WL 4760064, at *8 (granting summary judgment where defendants were unaware plaintiff was suffering from a condition requiring urgent medical care).

Indeed, on November 21, 2013, Dr. Braselmann conducted a physical of Rothschild and found no abnormalities, and laboratory results were also normal. (Pl.'s SMF ¶¶ 4, 8.) The blood test taken by Nurse Northrop to determine if Rothschild was having a Crohn's disease flare-up also found no abnormalities. (*Id.* ¶¶ 11-12, 16, 20.)[12] After that, Rothschild offers nothing to suggest that Dr. Braselmann or Nurse Northrop had anything to do with him before he was taken to the emergency department of a local hospital. (*Id.* ¶¶ 24-32.)

Rothschild also argues that, after the blood test results found no abnormalities, neither Dr. Braselmann nor Nurse Northrop "took any other steps to fully examine [him] or otherwise treat his condition." (Dkt. No. 115, Attach. 5 at 11.) But "mere disagreement over the proper treatment does

---

[12] Rothschild argues that Nurse Northrop recognized the initials on the laboratory report as belonging to Dr. Braselmann, which Dr. Braselmann denied. (Pl.'s SMF ¶¶ 6, 18-23.) But it is of no consequence because Rothschild agrees that the results found no abnormalities. (*Id.* ¶ 20.) Given the lack of factual support for Rothschild's claim, Dr. Braselmann's credibility is irrelevant. (Dkt. No. 115, Attach. 5 at 12 n.4.)

not create a constitutional claim." *Chance*, 143 F.3d at 703; *Rodriguez v. Conway*, 827 F. Supp. 2d 211, 213 (W.D.N.Y. 2011) (granting summary judgment where "[a]ll that the record shows . . . is that plaintiff subjectively believes that more should have been done for him"); *Burgos v. Alves*, 418 F. Supp. 2d 263, 265 (W.D.N.Y. 2006) (granting summary judgment where "[w]ith the benefit of hindsight, plaintiff simply contends that [defendants] should have done more sooner"). Rothschild's citation to *Burton v. Lynch*,[13] (Dkt. No. 115, Attach. 5 at 10-11), is readily distinguishable because, in that case, the plaintiff prisoner advised the defendant doctor that he had elbow pain, and the doctor refused to examine his elbow. Here, Rothschild cannot establish that Dr. Braselmann or Nurse Northrop were even aware of his urological symptoms, as explained above.

Even if Rothschild had established a prima facie case against Dr. Braselmann and Nurse Northrop, they would nonetheless be entitled to qualified immunity. That is, given the care that Dr. Braselmann and Nurse Northrop rendered under the circumstances, as well as their lack of awareness of Rothschild's urological symptoms, it was objectively reasonable for them to believe that their actions did not violate Rothschild's

---

[13] 664 F. Supp. 2d 349 (S.D.N.Y. 2009).

rights.  *See Hathaway*, 37 F.3d at 67.

>    6.    *Dr. Adams*

Rothschild argues that Dr. Adams is liable for two different events:

his failure to change Rothschild's catheter, (Dkt. No. 115, Attach. 5 at 14-

17), and his failure to admit Rothschild to the infirmary on July 31, 2014,

(*id.* at 21-22).  The court agrees with DOCCS defendants that Rothschild's

claim regarding the events of July 31 fails as a matter of law.  (Dkt. No.

107, Attach. 29 at 11-12.)  But Rothschild's claim regarding Dr. Adams'

failure to change his catheter survives summary judgment.

>    a.    *Monthly Catheter Changes*

Rothschild contends that Dr. Adams was responsible for ordering his

monthly catheter changes, (Pl.'s SMF ¶¶ 38, 44, 60,[14] 66, 68), and he was

aware that patients with a Foley catheter are at a high risk of getting

infections, (*id.* ¶ 64).  Rothschild also maintains that from his arrival at

Clinton on March 3, 2014 until May 14, his catheter was not changed.  (*Id.*

¶ 77.)[15]  On May 14, Rothschild states that he "was caused to undergo a

---

[14] Rothschild's citation for this proffered fact is incorrect.  However, he testified at deposition that he told Dr. Adams that he had a Foley catheter that needed to be changed monthly.  (Dkt. No. 107, Attach. 17 at 72.)

[15] DOCCS defendants contend that his catheter was changed on March 30.  (Dkt. No. 107, Attach. 29 at 4.)  This is a factual dispute not appropriately resolved at summary

Foley catheter change because his catheter line had rotted out and fell out of his body." (*Id.* ¶ 91.) He argues that this caused, in late April 2014, nausea, vomiting, abdominal pain, foul-smelling urine with blood, rigors, and general malaise. (*Id.* ¶¶ 76, 79-80; Dkt. No. 115, Attach. 5 at 2.)

DOCCS defendants' argument that Rothschild has not established a claim against Dr. Adams regarding his catheter is unavailing. (Dkt. No. 121 at 8-9.) They merely dispute the facts that Rothschild has adduced and argue that "the record is completely devoid of any proof that Dr. Adams subjectively believed that not changing [Rothschild]'s catheter . . . would put [him] at risk of serious harm." (*Id.* at 9.) However, that ignores the facts discussed in the preceding paragraph.

Rothschild has demonstrated that a reasonable jury could find that Dr. Adams' was deliberately indifferent to a serious medical need. It cannot be said as a matter of law that Rothschild's catheter rotting out and falling out of his body—combined with nausea, vomiting, abdominal pain, foul-smelling urine with blood, rigors, and general malaise—is not sufficiently serious. *See Chance*, 143 F.3d at 702. It also cannot be said

_____

judgment. Further, even if DOCCS defendants are correct, the period of time between March 30 and May 14 is still greater than a month.

as a matter of law that Dr. Adams did not act with a sufficiently culpable state of mind.  *See Hathaway*, 37 F.3d at 66.  Rothschild has adduced facts such that a reasonable jury could find that Dr. Adams failed to act while he was actually aware of a substantial risk that serious harm to Rothschild would result.  *See Salahuddin v. Goord*, 467 F.3d 264, 280 (2d Cir. 2006).  As a matter of law on this record, Rothschild's proof does not suggest mere medical malpractice without culpable recklessness, *see Hernandez*, 341 F.3d at 144, or mere disagreement over the proper treatment, *see Chance*, 143 F.3d at 703.

At this juncture, Dr. Adams is not entitled to qualified immunity either.[16]  It would not be objectively reasonable for Dr. Adams to believe that, as the healthcare provider responsible for Rothschild's monthly catheter changes, failing to order them was constitutionally tolerable.  *See Hathaway*, 37 F.3d at 67.

> b.   *July 31, 2014*

Rothschild's claim against Dr. Adams as it pertains to the events of July 31, 2014 does not survive summary judgment.  That day, Dr. Adams

---

[16] DOCCS defendants did not make a qualified immunity argument specific to Dr. Adams.  (Dkt. No. 107, Attach. 29 at 16-18.)  Rather, he was included in their general argument for qualified immunity.  (*Id.*)

was told, by telephone, that Rothschild was complaining of bladder spasms, discomfort, chills, and had been experiencing symptoms for ten hours. (Pl.'s SMF ¶ 118.) He was also told that Rothschild's vital signs were normal except for an elevated heart rate, and he did not have a temperature or kidney pain. (*Id.*) Dr. Adams prescribed an antibiotic to be administered at the time and advised Rothschild to follow up with a doctor visit in the morning. (*Id.* ¶ 119.) The next day, Rothschild was diagnosed with an acute UTI, was admitted to the infirmary, and was eventually transported to an outside hospital. (*Id.* ¶¶ 124-127.)

Rothschild contends that, despite concern about his rapid pulse rate, Dr. Adams failed to order a sample of his urine or order a laboratory urinalysis. (Dkt. No. 115, Attach. 5 at 20.) He also argues that he should have been admitted to the infirmary and/or an outside hospital on July 31. (*Id.* at 22.) But, as noted, "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. Rothschild's belief that more should have been done for him is insufficient to establish a viable claim. *See Rodriguez*, 827 F. Supp. 2d at 213. With the benefit of hindsight, he simply contends that Dr. Adams should have done more sooner, which fails as a matter of law. *See Burgos*, 418 F.

Supp. 2d at 265.

And, even if such a claim were viable, Dr. Adams is entitled to qualified immunity as to July 31. For the reasons explained by DOCCS defendants, (Dkt. No. 107, Attach. 29 at 11-12), it was objectively reasonable for Dr. Adams to believe that his actions did not violate Rothschild's rights. *See Hathaway*, 37 F.3d at 67.

7. *Dr. Johnson*

DOCCS defendants argue that Dr. Johnson was not personally involved in any alleged violation. (Dkt. No. 107, Attach. 29 at 12-14.) Rothschild's claim against Dr. Johnson is based on her failure to change or order a change for his catheter during his April 29 to May 2 infirmary admission. (Dkt. No. 115, Attach. 5 at 16-18.) The court agrees with DOCCS defendants.

Importantly, Rothschild states that Dr. Adams, as his healthcare provider, was responsible for ordering monthly catheter changes. (Pl.'s SMF ¶ 66.) He makes no such statement concerning Dr. Johnson. This dooms Rothschild's sole theory of liability against her—that she failed to change his catheter.

Rothschild argues that the risk posed by a failure to change his

catheter was obvious.  (Dkt. No. 115, Attach. 5 at 16-17.)  He specifies that

"it is standard practice and common sense to change a patient's catheter

line upon the patient's presentation with an acute [UTI]."  (*Id.* at 16 (internal

quotation marks and citation omitted).)  But this ignores the undisputed

facts.  On April 30, Dr. Johnson examined Rothschild and found that he

was in no acute distress, his catheter was intact, and it was draining.

(Defs.' SMF ¶ 62.)  She ordered continued intravenous fluids, close

monitoring, and various tests.  (*Id.* ¶ 63.)  Dr. Johnson also changed

Rothschild's antibiotic and added another antibiotic.  (*Id.* ¶¶ 63-64.)  She

examined him again on May 1 and May 2.  (*Id.* ¶¶ 65, 70.)  On May 2, prior

to his discharge from the infirmary, Rothschild was feeling well, had a good

appetite, was in no apparent distress, and wanted to go back to his cell.

(*Id.* ¶ 70.)  She also examined his catheter again and found it intact and

functioning properly.  (*Id.* ¶ 71.)[17]  Thus, Rothschild's argument that there

was an obvious risk rings hollow.  He merely disagrees over the proper

treatment, which is insufficient.  *See Chance*, 143 F.3d at 703; *Rodriguez*,

---

[17] Dr. Johnson asserts that she did not believe a catheter change was necessary because it was intact and draining well.  (Defs.' SMF ¶ 73.)  Rothschild denies this fact but fails to cite any evidence that Dr. Johnson did not so believe.  (Dkt. No. 115, Attach. 4 at 9.)  In any event, as explained above, Rothschild does not state that Dr. Johnson was responsible for his catheter changes, and the risk was not obvious.

827 F. Supp. 2d at 213; *Burgos*, 418 F. Supp. 2d at 265.

Further, even if Rothschild established his claim against Dr. Johnson, she would nonetheless be entitled to qualified immunity. That is, given the care that Dr. Johnson rendered under the circumstances, as well as the lack of any evidence that she was responsible for changing his catheter, it was objectively reasonable for her to believe that her actions were constitutionally permissible. *See Hathaway*, 37 F.3d at 67.

### 8. Nurse Waldron

Rothschild argues that Nurse Waldron is liable for her conduct in changing his catheter. (Dkt. No. 115, Attach. 5 at 18-19.) The court agrees with DOCCS defendants that this claim fails as a matter of law. (Dkt. No. 107, Attach. 29 at 14-15.)

Rothschild contends that Nurse Waldron "took approximately thirty (30) to forty (40) minutes to force the new [catheter] line in and caus[ed] excruciating pain." (Pl.'s SMF ¶ 94.) Rothschild also "felt pressure in his bladder, was not able to walk, and verbally expressed that [the catheter] 'did not feel right'," (*id.*), and he filed a grievance concerning her conduct,

*(id.* ¶ 95).[18]

Even if Rothschild has adequately established a serious medical need,[19] he has failed to meet the subjective prong of the deliberate indifference standard. "[A]llegations of negligence or error amounting to medical malpractice are insufficient to sustain a claim of deliberate indifference under [S]ection 1983." *Nisvis v. N.Y.S. Dep't of Correctional Servs.*, No. 11 Civ.2004, 2013 WL 4757839, at *5 (S.D.N.Y. Sept. 4, 2013) (collecting cases). Moreover, "where a plaintiff has not alleged that a medical professional 'knowingly and intentionally rendered improper treatment, [his] asserted dissatisfaction with the treatment itself is insufficient to support the subjective prong of deliberate indifference.'" *Id.* (quoting *Jones v. Mack*, No. 08 Civ. 6089, 2012 WL 386269, at *5 (S.D.N.Y. Feb. 3, 2012)). So here.

Moreover, even if Rothschild could establish a claim against Nurse Waldron, she is entitled to qualified immunity. It was objectively

---

[18] Rothschild states that a corrections officer told him that "it's not supposed to feel normal" and to "get the hell out of here." (Pl.'s SMF ¶ 94.) But the corrections officer's actions have no bearing on Nurse Waldron's liability. Rothschild also states that Nurse Waldron was aware that it was important to look for signs and symptoms of infection. (*Id.* ¶ 98.) But he makes no allegation that he had any signs or symptoms of infection when Nurse Waldron treated him. Indeed, he was examined by Dr. Adams ten days later and makes no mention of signs or symptoms then either. (*Id.* ¶ 99.)

[19] The court need not and does not reach this issue.

reasonable for her to believe that her changing of Rothschild's catheter was not constitutionally violative, even if she did not change it correctly. *See Hathaway*, 37 F.3d at 67.  Rothschild makes no allegation that he told Nurse Waldron that he was experiencing excruciating pain, bladder pressure, or inability to walk, and in fact he agrees that her nursing note documents that the change was without issue.  (Pl.'s SMF ¶ 96.)[20]

 *9. Nurse Walker*

 DOCCS defendants argue that Rothschild's claim against Nurse Walker is insufficient as a matter of law.  (Dkt. No. 107, Attach. 29 at 15.) Rothschild contends that he has adduced enough facts for a jury to be able to conclude that she was deliberately indifferent to a serious medical need. (Dkt. No. 115, Attach. 5 at 20, 21.)  The court agrees with DOCCS defendants.

 On July 31, Rothschild told Nurse Walker that he was "'bleeding and leaking'" around his catheter.  (Pl.'s SMF ¶ 100.)  She examined him and noted that his catheter "irrigated easily and good return, flow back [sic]." (*Id.* ¶ 103.)  She also checked the tip of his penis and his underwear and

---

[20] Rothschild states that he verbally expressed that his catheter "'did not feel right,'" but it is unclear whether he did so to Nurse Waldron.  (Pl.'s SMF ¶ 94.)  In any event, he makes no allegation that he verbally expressed anything about pain, pressure, or inability to walk.

found no signs of bleeding or leaking.  (*Id.*)  Based upon her examination,

Nurse Walker found that Rothschild's condition was non-emergent and

directed him to follow up at the regular sick call the following morning.

(Defs.' SMF ¶ 83.)

Rothschild's theory of liability is based on actions that Nurse Walker

did not take.  (Dkt. No. 115, Attach. 5 at 20, 21.)  He contends that she did

not attempt to contact a physician or nurse practitioner; did not note his

vital signs in her nursing note; and did not do a dipstick analysis.  (*Id.*)  But

Rothschild's subjective belief that more should have been done for him is

insufficient, *see Rodriguez*, 827 F. Supp. 2d at 213; *Burgos*, 418 F. Supp.

2d at 265, and "mere disagreement over the proper treatment does not

create a constitutional claim."  *Chance*, 143 F.3d at 703.

And, even if Rothschild could establish a claim against Nurse Walker,

she is entitled to qualified immunity.  It was objectively reasonable for her

to believe that, when she examined Rothschild, found his condition non-

emergent, and directed him to follow up the next morning, she was not

violating Rothschild's rights.  *See Hathaway*, 37 F.3d at 67.

**C.    Dr. Lieb's Motion for Summary Judgment**

Dr. Lieb argues that Rothschild has failed to establish a deliberate

indifference claim against him.  (Dkt. No. 109, Attach. 11 at 3-4.)

Rothschild counters that Dr. Lieb is liable for failing to change his catheter

or put orders in place for it to be changed.  (Dkt. No. 114, Attach. 5 at 4-7.)

The court agrees with Dr. Lieb.

Rothschild's claim against Dr. Lieb suffers from the same fatal flaw

as his claim against Dr. Johnson—he adduces no evidence that it was Dr.

Lieb's responsibility to change his catheter.  Rothschild asserts that Dr.

Adams, as his healthcare provider, was responsible for ordering monthly

catheter changes.  (Pl.'s SMF ¶ 66.)  But he makes no such assertion

concerning Dr. Lieb.  In fact, although Rothschild's medical chart noted

that his catheter should be changed monthly, (Pl.'s Lieb SMF ¶ 4), at the

March 20, 2014 appointment at issue, Dr. Lieb told Rothschild that he did

not have his chart and "didn't know what his circumstances were."  (*Id.*

¶ 13).[21]  Rothschild mentioned, to Dr. Lieb, a discussion about a possible

surgical procedure that he had with a prior doctor, and self-catheterization

may have been discussed.  (*Id.* ¶¶ 15-16.)  But Rothschild does not state

---

[21] Dr. Lieb was not always provided with medical charts for inmate patients.  (Pl.'s Lieb SMF ¶ 12.)

that he mentioned anything about a catheter change to Dr. Lieb.[22]

Additionally, Rothschild's argument that the substantial risk to his health resulting from a failure to change his catheter was obvious to Dr. Lieb, (Dkt. 114, Attach. 5 at 5), is belied by the record.  Rothschild fails to offer facts suggesting that Dr. Lieb was exposed to information concerning his monthly catheter change and must have known about it, such that a reasonable trier of fact could find that Dr. Lieb had the requisite knowledge. *See Farmer*, 511 U.S. 842-43.  Indeed, as explained in the preceding paragraph, the facts indicate that Dr. Lieb did not have Rothschild's chart and Rothschild did not tell him of his monthly catheter changes.  Dr. Lieb's general awareness that patients with a Foley catheter are at a higher risk of infections, (Pl.'s Lieb SMF ¶ 23), does not render the risk specific to not changing Rothschild's catheter obvious to Dr. Lieb.

Furthermore, assuming that Rothschild has established a claim against Dr. Lieb, he too is entitled to qualified immunity.[23]  It was the

_____

[22] In fact, Dr. Lieb's report of consultation for the March 20 appointment noted that "at the time [he] saw [Rothschild], he had a cath[eter] in, *placed on 2/27* with leg bag."  (Pl.'s SMF ¶ 52 (emphasis added).)  Thus, it had not been a month since Rothschild's last catheter change, and there was at least a week's time before the catheter had to be changed.

[23] Although Dr. Lieb did not specifically raise the argument, the court has the "power to grant summary judgment *sua sponte* . . . based upon the defense of qualified immunity." *Doyle v. Coombe*, 976 F. Supp. 183, 187 (W.D.N.Y. 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998).

responsibility of Rothschild's healthcare provider, Dr. Adams, (Pl.'s SMF ¶ 66), to order monthly catheter changes, not Dr. Lieb. He told Rothschild that he did not have his chart, and there is nothing to indicate that he knew that Rothschild's catheter needed to be changed. (Pl.'s Lieb SMF ¶ 13). And, even if he somehow knew of the monthly requirement, Dr. Lieb's notes indicate that Rothschild's catheter had been changed less than a month prior. *See supra* n.22. It was thus objectively reasonable for Dr. Lieb to believe that he acted in a constitutionally lawful manner. *See Hathaway*, 37 F.3d at 67.

## D. Motion to Disqualify Rothschild's Experts

DOCCS defendants' reply brief in support of their motion for summary judgment includes an argument that Rothschild's experts should be disqualified. (Dkt. No. 121 at 1-5.) They argue that Rothschild failed to comply with Rule 26(a)(2)(B) and his expert proof lacks a reliable foundation. (*Id.*) For the reasons stated in Rothschild's surreply, (Dkt. No. 124),[24] DOCCS defendants' motion to disqualify Rothschild's experts is denied with leave to renew in connection with trial.

## V. Conclusion

---

[24] The court granted Rothschild's request to file a surreply. (Dkt. No. 123.)

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that DOCCS defendants' motion for summary judgment (Dkt. No. 107) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **DENIED** as to the claim against Dr. Richard Adams regarding Rothschild's catheter (3d Am. Compl. ¶ 101) and as to the motion to disqualify Rothschild's experts (Dkt. No. 121 at 1-5); and
>
> **GRANTED** in all other respects, with the dismissal of the Doe and Unknown defendants being without prejudice; and it is further

**ORDERED** that Dr. Lieb's motion for summary judgment (Dkt. No. 109) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate every defendant from this action except for Dr. Richard Adams; and is further

**ORDERED** that this case is now deemed trial-ready and a trial scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 21, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge